RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
ALEXANDRIA, LOUISIANA
DATE 5/17/11
BY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| ELDER OFFSHORE LEASING | : | DOCKET NO. 2:02-1685 (Lead) |
| | | 2:02-2517 (Member) |
| | | 2:02-1274 (Member) |
| VS. | : | JUDGE TRIMBLE |
| SAFE HAVEN ENTERPRISES, INC, ET AL | : | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Before the court is a "Motion for Summary Judgment and Release of Funds from the Registry of the Court" (R.#444) filed by defendant, Bolivarian Republic of Venezuela ("Venezuela") wherein the mover seeks summary judgment in its favor and the release of certain funds it had previously deposited with the Registry of the Court. Venezuela originally deposited said funds in connection with a cash bond it issued to facilitate the release of property encumbered by a lien filed by Safe Haven ("Safe Haven Bond"). Venezuela maintains that the Safe Haven Bond specified the conditions under which Safe Haven would be entitled to receive those funds and further asserts that there is no genuine issue of material fact that Safe Haven cannot satisfy those conditions. Thus, Venezuela maintains that it is entitled to receive the funds from the Safe Haven Cash Bond that remain in the Registry of the Court. Safe Haven maintains that there is a genuine issue of material fact for trial as to whether or not it properly preserved its lien.

Also before the court is a motion for oral arguments (R. #448) filed by Venezuela. Because the memoranda filed by the parties adequately informs the court of the issues set forth in the motion, we find that oral arguments are not necessary and will deny the motion.

# FACTUAL STATEMENT

In 2002, the Navy of Venezuela contracted with Consorcio Groupo Total Mar ("Total Mar") to construct and install living-quarter modules on concrete platforms at a naval base located at Isla de Aves. Elder Offshore Leasing, Inc. ("Elder") subcontracted with Total Mar to construct the modules and Safe Haven subcontracted with Elder for the design and construction of the modules. Near completion of the project, a dispute arose between Elder and Safe Haven which resulted in Elder filing suit for breach of contract against Safe Haven on August 7, 2002.

On August 8, 2002, Safe Haven filed a Statement of Claim, Privilege, and Lien against the modules in the Jefferson Davis Parish mortgage records for a purported amount of $322,049.38 owed by either Total Mar and/or Elder. On September 17, 2002, Safe Haven filed a counterclaim in this action against Elder seeking $322,049.38 for the value of goods and services Safe Haven provided with respect to the modules.

On November 19, 2002, Safe Haven filed a petition to enforce its lien in the Thirty-First Judicial District Court for the Parish of Jefferson Davis. The state district court ordered that Safe Haven's liens and privileges be recognized and that the modules be sequestered in Louisiana. On December 9, 2002, Elder removed Safe Haven's action to federal court; it was later consolidated with Elder's suit in the Western District of Louisiana.

Venezuela intervened in the consolidated federal case and sought a declaratory judgment that Venezuela was the owner of the modules; several other parties intervened to assert claims and/or liens against the modules. Venezuela then moved for an order to allow it to furnish bonds in lieu of the liens and sequestration of the modules. An order was issued by this court which authorized the parties to file a joint stipulation to include the appropriate bonds and exhibits necessary to allow

Venezuela to remove the modules from Louisiana. The joint stipulation was entered on September 16, 2003. Venezuela deposited into the Registry of the Court $3.5 million to secure the various bonds included in the stipulation which allowed the lien holders to draw upon to satisfy their bond agreements. Before Venezuela issued the cash bonds, Safe Haven filed its First Supplemental and Amending Answer and Counterclaim; the amendment increased the amount of its monetary claim against Elder to $638,489.33.

On February 18, 2004, in its "Cash Bond for Release of Lien of Safe Haven Enterprises, Inc.", ("Safe Haven Cash Bond") Venezuela agreed that the lien claims asserted by Safe Haven against the modules were valid up to the amount of $376,000 ("Stipulated Safe Haven Claim"). In the Safe Haven Cash Bond, Venezuela agreed that if it was determined not to be the owner of the modules, the amount of the Stipulated Safe Haven claim would be paid to Safe Haven. Venezuela also reserved its right to challenge the validity of the remaining claims asserted by Safe Haven ("Reserved Claims") because it challenged whether or not Safe Haven had properly filed another lien in the mortgage records to secure the additional amount sought in Safe Haven's amended counterclaim.

The Cash Bond for Release of Lien of Safe Haven Enterprises, Inc. divided the Safe Haven claim into two categories: (1) the Stipulated Safe Haven claim, and the (2) Reserved Claims. The Cash Bond for Release of Lien of Safe Haven Enterprises, Inc. provided that the Reserved Claims would be paid to Safe Haven only after "there has been entered a final judgment or decree by the above-captioned court, which is either not appealed or is sustained on appeal or review including any proceedings within the United States Supreme Court and was in all respects final and non-appealable. Furthermore, said judgment must (1) establish the validity of the Reserved Claims; (2)

establish the validity of the Claim of Liens made in respect of the Reserved Claims; and (3) provide that Venezuela was not the owner of the Modules."[1]

This court determined that Venezuela was not the owner of the modules and by order dated May 27th, 2005, the Stipulated Safe Haven Claim was released to Safe Haven. Thus, the only remaining funds deposited with the Registry of the Court at issue in this litigation is the amount deposited for the Reserved Claims. Venezuela maintains that Safe Haven never filed a Statement of Claim in the public records as required by the Louisiana Private Works Act ("LPWA") to secure the Reserved Claims, and because the Reserved Claims are not secured by a valid Claim of Lien, and Safe Haven cannot receive a judgment to that effect, it is not entitled to any funds remaining from the Safe Haven Cash Bond. Thus, Venezuela maintains that the remaining funds must be returned.

Safe Haven asserts that (1) it has filed at least two separate valid Claims of Lien in this matter that cover the property at issue in accordance with Louisiana Revised Statute 9:4802; (2) any claims by Venezuela that no "valid" Claim of Lien was filed is overcome by Safe Haven's delivery of the Statement of Claim to the appropriate parties and/or subsequent timely filing of suit in this matter in accordance with Louisiana Revised Statute 9:4823; and (3) that Venezuela's furnishing of a cash bond extinguished the legal requirements of filing a Statement of Claim in accordance with the LPWA, but did not affect Safe Haven's other rights of recovery which it may have against the owner, contractor or surety in this matter.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, when viewed in the light most favorable

---

[1] R. #274.

4

to the non-moving party, indicate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[2] A fact is "material" if its existence or nonexistence "might affect the outcome of the suit under governing law."[3] A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.[4] As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim."[5] Once the movant makes this showing, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial.[6] The burden requires more than mere allegations or denials of the adverse party's pleadings. The non-moving party must demonstrate by way of affidavit or other admissible evidence that there are genuine issues of material fact or law.[7] There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party.[8] If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[9]

---

[2] Fed. R.Civ. P. 56(c).

[3] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

[4] Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999).

[5] Vera v. Tue, 73 F.3d 604, 607 (5th Cir. 1996).

[6] Anderson, 477 U.S. at 249.

[7] Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

[8] Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

[9] Anderson, 477 U.S. at 249-50.

## LAW AND ANALYSIS

To preserve a privilege under the LPWA, a party must file a Statement of Claims which shall (1) be in writing, (2) be signed by the person asserting the claim or privilege, (3) reasonably identify the movable with respect to which work was performed or movables or services were supplied or rendered and the owner thereof, (4) set forth the amount and nature of the obligation giving rise to the claim or privilege and reasonably itemize the elements comprising it including the person for whom or to whom the contract was performed, material supplied or services rendered.[10] The Statement of Claims must be filed within sixty days after (1) the filing of a notice of termination of the work; or (2) the substantial completion or abandonment of the work, if a notice of termination is not filed.[11]

*Did Safe Haven file a valid statement of claims?*

Venezuela maintains that Safe Haven's failure to file a timely Statement of Claims against the Modules for the amounts it seeks to recover in the Reserved Claims is fatal to any attempt by Safe Haven to recover the remaining amounts of the Bond in the Registry of the Court. Venezuela argues that filing a timely Statement of Claims is an absolute condition precedent to asserting lien rights under the LPWA .[12] In the instant case, there was no Notice of Termination filed, so Safe Haven had sixty days from the substantial completion of work to file any Statement of Claims it

---

[10] La. R.S. 9:4822(G).

[11] La. R.S. 9:4822(C).

[12] C&S Safety Systems, Inc. v. SSEM Corp., 843 So.2d 447, 451 (La.App. 4 Cir. 3/19/03)(holding that any right a subcontractor would have had against an owner under the LPWA is lost when it fails to timely file a statement of claim to preserve that privilege).

6

sought to assert under the LPWA.[13] Venezuela asserts that the Modules were substantially completed sometime in late 2002 or early 2003. Safe Haven does not dispute this. Venezuela argues that the Mortgage records in Jefferson Parish reveal only one Statement of Claims filed by Safe Haven in August 2002 in the amount of $322,049.48.

Safe Haven maintains that Venezuela's own exhibits illustrate that there are at least two (2) and possibly three (3) separate liens filed by Safe Haven in the Jefferson Davis Parish mortgage records against "LIVING QUARTERS AND SERVICE MODULE AT 101 CALCASIEU STREET LAKE ARTHUR, LA" in the total amount of $814,147.37. Safe Haven then asserts that none of the liens have been cancelled, and the total amount of the liens is more than sufficient to satisfy Safe Haven's claims.[14]

Venezuela asserts that only one lien was filed against the Modules on August 8, 2002 against Elder as evidenced by the certified mortgage records and the original petition filed in Jefferson Davis Parish.[15] As noted by Venezuela, the two liens relied on by Safe Haven against Total Mar and Elder bear the same File No. 589921. Thus, the mortgage certificates reflect the same 2002 Safe Haven lien against two different entities, Total Mar and Elder. Venezuela further remarks that the third lien

---

[13] La.R.S. 9:4822(C).

[14] Both parties agree that Safe Haven has been paid $376,000.

[15] ¶ 23 provides that:

On August 8, 2002, a Statement of Claim, Privilege, and Lien was filed in the public records of Jefferson Davis Parish, Louisiana creating a Private Works Lien pursuant to La. R.S. 9:4801, et seq. in the amount of $322,049.38 against the Living Quarters and Research Laboratories – Isla des Aves Project. A copy of that lien which bears Clerk's File No. 589921 is attached hereto and made in part hereof and marked "Safe Haven Exhibit D" for identification. Petition in Member Case No. 2:02cv2517. R. #1.

for $179,048.61 is a lien against different property owned by Elder. This lien bears File No. 590777 and involved a different "12-Man Living Quarters" that Safe Haven built for Elder in connection with a project for Shell Exploration & Production Company, Inc. ("Shell") as evidenced by the original petition in the member case 2:02cv2517.[16]

The court finds that the third lien against Elder for $179,048.61 is not related to the Total Mar project and creates no lien rights in favor of Safe Haven in the Modules in this matter. The court further finds that Safe Haven only preserved one lien against Elder and Total Mar in the amount of $322,049.38, not two separate and distinct liens. Thus, there is no genuine issue of material fact for trial as to Safe Haven's alleged multiple lien theory.

*Is filing a Statement of Claims a necessary requirement?*

Safe Haven filed its First Supplemental and Amending Counterclaim and increased its monetary award from $322,049.38 to $638,489.33.[17] Venezuela maintains that because Safe Haven did not file any other Statement of Claims against the modules under the LPWA, and the claims secured by the Statement of Claims filed in August 2002 has been satisfied with proceeds from the Safe Haven Cash Bond, it has no valid lien rights to assert against the remaining amount of the Safe Haven Cash Bond.

Safe Haven argues that filing a Statement of Claims is not a necessary requirement. Safe

---

[16] ¶ 9 of the petition provides as follows:

Pursuant to the Louisiana Oil Wells Lien Act, La. R.S. § 9:4861-4667, Safe Haven has filed a materialman's and laborer's lien in Jefferson Davis Parish, Louisiana against the said immovable living quarters now located in the Shell Project. A copy of the said lien which bears clerk's file number 590777 is attached hereto as "Safe Haven Exhibit B." R. #1.

[17] R. #97, ¶ 3.

Haven relies on Louisiana Revised Statute 9:4823(B) which provides as follows:

> A claim against a contractor granted by R.S. 9:4802 is not extinguished by the failure to file a statement of claim or privilege as required by R.S. 9:4822 if a statement of the claim or privilege is delivered to the contractor within the period allowed for its filing by R.S. 9:4822.[18] The failure to file an action against the owner as required by R.S. 9:4823(A)(2) shall not extinguish a claim against a contractor if an action for the enforcement of the claim is instituted against the contractor or his surety within one year after the expiration of the time given by R.S. 9:4822 for filing the statement of claim or privilege to preserve it.

Safe Haven asserts that when it filed its First supplemental and Amending Counterclaim in which it increased its monetary amount, the Statement of Claims was delivered to Elder, the contractor, in accordance with Louisiana Revised Statute 9:4823(B) as evidenced by its service upon Elder in the Court records. Safe Haven contends that this service of the Counterclaims was a valid Statement of Claims to the contractor and that it has satisfied its obligations in accordance with the LPWA or specifically, Louisiana Revised Statute 9:4823(B).

Venezuela argues that Safe Haven's reliance on § 9:4823(B) of the LPWA is misplaced because the issue raised by Venezuela is whether Safe Haven properly preserved LPWA lien rights in the modules for the amount of its Reserved Claims. As noted by Venezuela, it does not contend that Safe Haven's claims against a contractor have extinguished, but that the filing of the amended claim alone, does not properly preserve Safe Haven's lien for the increased amount.

The Court agrees. In order for Safe Haven to properly preserve its lien rights in the modules, it must have complied with Louisiana Revised Statute 9:4822 for the increased amount of damages it is seeking. The summary judgment evidence submitted established only one lien was preserved

---

[18] The period provided for a general contractor in § 4822(B) is sixty days after the filing of a notice of termination or substantial completion of the work.

9

in August 2002 for $322,049.38 as to the modules at issue with regard to this motion for summary judgment. The evidence clearly established that there was only one Statement of Claims filed against Elder and/or Total Mar. The other lien relied upon by Safe Haven was for the Shell project and is not relevant to this motion. Accordingly, we find that Safe Haven did not satisfy the requirements set forth in § 9:4822 with respect to the Reserved Claims because filing a Statement of Claims is a necessary requirement that must be met in order to preserve lien rights in accordance with the LPWA.

*Did Venezuela's filing of a cash bond extinguish all liens or privileges?*

Safe Haven maintains that Venezuela's filing of the cash bond extinguished all liens or privileges granted by the LPWA without affecting other rights the claimant or privilege holder may have against the owner, the contractor, or the surety. Therefore, according to Safe Haven, once the bond was posted, the liens and/or privileges extinguished, along with the necessity for the formalities of the LPWA. Moreover, Venezuela lost the right to challenge the validity of Safe Haven's claims of lien under the LPWA once the bonds were posted. We disagree.

The Safe Haven Cash Bond specifically put conditions on payment for the Reserved Claims which are that Safe Haven obtain a final, non-appealable judgment that establishes (1) that Venezuela is not the owner of the modules, (2) the validity of the Reserved Claims; and (3) the validity of the Claims of Lien made with respect to the Reserved Claims. The Safe Haven Cash Bond expressly preserved Venezuela's right to challenge whether Safe Haven properly preserved its lien in the modules. To argue that furnishing the Bond extinguished that right is completely contradictory to the express language in the Bond and inherently illogical.

## CONCLUSION

For the reasons set forth above, the court finds that Safe Haven failed to properly preserve its lien in the modules as to the Reserved Claims, the consequence of which is that Safe Haven cannot receive a judgment to that effect. Thus, Safe Haven is not entitled to the remaining funds from the Safe Haven Cash Bond, and Venezuela is entitled to a return of the remaining funds for the Reserved Claims. Because of this ruling in favor of Venezuela, the court will defer ruling on the issue raised by Venezuela as to whether or not Safe Haven's admissions, by failure to answer Venezuela's First Set of Discovery Requests , warrant summary judgment in Venezuela's favor.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 17th day of May, 2011.

*[signature]*
JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE